IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILTON REGIONAL SEWER, | : | 4:13-CV-2786 |
| AUTHORITY, | : | |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| | : | |
| TRAVELERS CASUALTY & | : | |
| SURETY CO. OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

June 24, 2014

## I. BACKGROUND:

On October 17, 2013, Plaintiff, the Milton Regional Sewer Authority

(hereinafter "MRSA") filed a complaint in the Court of Common Pleas of

Northumberland County against Travelers Casualty & Surety Co. Of America

(hereinafter "Travelers").[1]  Travelers promptly removed the complaint to the

---

[1]The complaint is insufficient, as it sets forth 32 paragraphs of alleged facts, without stating any cause of action.  It is not clear to the undersigned if the plaintiff is alleging a breach of contract action, or a declaratory judgment action or some other type of action.  The Court will order Plaintiff to file an amended complaint that states a cause of action, i.e. the legal basis upon which the complaint is predicated.  Travelers appears to be operating under the assumption that this is a breach of contract action, and it also appears to the undersigned that this matter is a breach of contract action.  Accordingly, the instant memorandum addresses Travelers' contentions as such.

United States District Court for the Middle District of Pennsylvania, predicated on diversity jurisdiction.

On November 20, 2013 Travelers filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 3.  The motion has been fully briefed and is ripe for disposition.  The motion will be granted in part, and the Plaintiff will be ordered to file an amended complaint.

## II.  DISCUSSION:

### A.  MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However,  "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  *Kost*, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, 2008 U.S. Dist. LEXIS 54882, *4, 2008 WL 1969311 (W.D. Pa. May 5, 2008) (Lancaster, J.).  Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964 (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80

(1957)).  However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief  under it. *Hellmann*, *supra*.  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *Twombly*, 127 S.Ct. at 1965. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, *supra*, *citing* Fed. R. Civ. P. 8(a).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  *Id*. at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  *Id.* at 327

## B. FACTS ALLEGED IN THE COMPLAINT

In the complaint, MRSA alleges that pursuant to a performance bond

(hereinafter "the bond"), found at ECF No. 1-4 p.115-118, Travelers is liable to MRSA for the failure of MRSA's contractor, Ankiewicz Enterprises, Inc., d/b/a/ Grandprix Excavation (hereinafter "Ankiewicz") to perform under a construction contract (hereinafter "the contract") between MRSA and Ankiewicz, found at ECF No. 1-4 p. 9-93.

The MRSA is a municipal authority situated in Milton, Pennsylvania. Travelers is, *inter alia*, a surety company based in Connecticut.

Ankiewicz was the low bidder on a construction project to demolish a wastewater treatment plant, abandon a force main, replace laterals, construct sewer pipe and rehabilitate existing sewer pipe. Accordingly, MRSA and Ankiewicz entered into a construction contract on July 25, 2011. The engineers for MRSA on the construction project were Herbert, Rowland Grubic, Inc. (hereinafter "HRG").

On December 30, 2011, Ankiewicz sent a letter to HRG. The letter from Ankiewicz indicated that there were unstable site conditions and requested an on-site meeting. Ex. D to Complaint, ECF No. 1-4 at 94. The letter indicated that it was a request for change order for $26,438.50. In response to the Ex. D letter, a meeting was held on January 3, 2012 between MRSA, Ankiewicz and HRG.

On January 10, 2012, HRG sent a letter to Ankiewicz to memorialize that meeting. Ex. E to Complaint, ECF No. 1-4 at 96-99. HRG determined that no

additional payment was due to Ankiewicz.  Additionally, the progress schedule was discussed at the meeting and Ankiewicz was advised that it was failing to conform to contract work deadlines.  The parties to the meeting also determined what steps Ankiewicz should take to complete the contractual duties.   This correspondence was not copied to Travelers.

On January 20, 2012, HRG sent a letter to Ankiewicz notifying it to suspend work on the project.  Ex. F to Complaint, ECF No. 1-4 at 100.  The letter scheduled a meeting for January 24, 2012 to review the alleged contractual breach by Ankiewicz.  This particular letter was copied to Travelers.

On January 28, 2012, HRG sent another letter to Ankiewicz to memorialize the January 24, 2012 meeting and to notify it that the suspension of its work was lifted, and it could resume work on the project.  Ex. G to Complaint, ECF No. 1-4 at 102.  A follow-up meeting was scheduled for February 9, 2012.  This letter was also copied to Travelers.

On February 20, 2012, HRG sent a letter to Ankiewicz  notifying it of MRSA's intent to declare Ankiewicz in default, and to proceed to terminate the contract for cause based on a review of Ankiewicz's work by HRG and Ankiewicz's continued failure to perform under the contract.  Ex. I to Complaint, ECF No. 1-4 at 103-4.   This correspondence was copied to Travelers.

6

On February 24, 2012, Ankiewicz's attorney sent a letter to HRG notifying it that Ankiewicz was willing to proceed to cure.  Ex. J to Complaint, ECF No. 1-4 at 105.  On February 28, 2012, HRG sent a letter to Traveler's and Ankiewicz's attorney to advise "that [MRSA] has elected to exercise their rights under the terms of the contract and [the bond] with respect to declaring [Ankiewicz] in default of the contract and terminating the contract for cause pursuant to the provisions of Article 15.02 of the General Conditions of the Construction Contract."  Ex. K to Complaint, ECF No. 1-4 at 106-112.  The letter detailed the various ways in which MRSA determined Ankiewicz to have breached the contract.

On March 23, 2013, HRG sent a letter to Ankiewicz to notify it that MRSA terminated the contract for cause effective March 15, 2012.  Ex. L to Complaint, ECF No. 1-4 at 113.  This letter was copied to Travelers.

## C.  ANALYSIS

Travelers avers that pursuant to both the bond and the contract, MRSA was obligated to meet certain conditions precedent before demanding payment under the bond.  Specifically, Travelers contends that first, MRSA did not give proper notice under the bond and breached the bond by failing to give proper notice and second, MRSA was obligated pursuant to the contract to give Ankiewicz the opportunity to cure. MRSA breached the contract by failing to provide that

opportunity.

MRSA filed what purports to be an opposing brief; it is more akin to a memorandum to a senior partner.  It is a single spaced document that cites to only one case to support its position. In that "brief," MRSA argues that it did provide proper notice, and, moreover, that Ankiewicz's breach was material, and as a result MRSA was not required to provide Ankiewicz the opportunity to cure because of the nature of the breach.

Travelers argues that MRSA must comply with conditions precedent before attempting to collect under the bond.  MRSA argues that it did comply with the conditions precedent, and, moreover, that there was a material breach of the terms of the contract.  MRSA contends that if the undersigned found that it did not comply with the terms of the bond and contract, it was excused from complying with the conditions precedent because there was a material breach.

The bond states:

3.  If there is no Owner Default, Surety's obligation under this Bond shall arise after:

> 3.1 Owner has notified Contractor and Surety...that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference wit Contractor and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the

Contract.    If Owner, Contractor and Surety agree, Contractor shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive Owner's right, if any, subsequently to declare a Contractor Default; and

3.2 Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract. Such Contractor Default shall not be declared earlier than 20 days after Contractor and Surety have received notice as provided in 3.1; and

3.3 Owner has agreed to pay the Balance of the Contract Price to:

1. Surety in accordance with the terms of the Contract;

2.  Another contractor selected pursuant to Paragraph 4.3 to perform the contract.

ECF No. 1-4 at 116.

Travelers first advances the argument that MRSA did not follow the terms of the bond in providing notice.  MRSA argues in response that it met the requirements of ¶ 3.1 by forwarding the January 20, 2012 letter and convening the January 24, 2012 meeting.  MRSA further states that it met the requirements of ¶ 3.2 because termination of the contract did not take place until March 15, 2012.

Travelers argues that MRSA's February 20, 2012 letter was the ¶ 3.1 notice that it was considering contractor default.  If the Court accepts Travelers interpretation of events, it follows that MRSA skipped the remaining requirements of ¶ 3.1 (along with the contracts requirement to provide opportunity to cure as

discussed below) and proceeded directly to ¶ 3.2 and terminated the contract

effective March 15, 2012.

The Court concludes that MRSA's interpretation of its own actions is

incorrect.  MRSA's January 20, 2012 letter was a directive to suspend work on the

contract.  Pursuant to Article 15.01 of the contract, MRSA was permitted to

suspend work at any time.  ECF No. 1-4 at p. 79, ¶ 15.01.  This clause reads, as

follows:

> 15.01 Owner May Suspend Work
> A. At any time and without cause, Owner may suspend the Work or any
> portion thereof for a period of not more than 90 consecutive days by
> notice in writing to Contractor and Engineer which will fix the date on
> which Work will be resumed.  Contractor shall resume the Work on the
> date so fixed...

That clause is followed by a detailed termination clause.

> 15.02 Owner May Terminate for Cause
>
> A. The occurrence of any one or more of the following events will justify
> termination for cause:
>
> > 1.  Contractor's persistent failure to perform the Work in
> > accordance with the Contract Documents (including, but
> > not limited to, failure to supply sufficient skilled workers or

suitable materials or requirement or failure to adhere to the
Progress Schedule established under Paragraph 2.07 as
adjusted from time to time pursuant to Paragraph 6.04);

2.  Contractor's disregard of Laws or Regulations of any
public body having jurisdiction;

3.  Contractor's repeated disregard of the authority of
Engineer; or

4.  Contractor's violation in any substantial way of any
provisions of the Contract Documents.

B.  If one or more of the events identified in Paragraph 15.02A occur,
Owner may, after giving Contractor (and surety) seven days written
notice of its intent to terminate the services of the Contractor:

1. exclude Contractor from the Site, and take possession of
the Work and of all Contractor's tools, appliances,
construction equipment, and machinery at the Site, and use
the same to the full extent they could be used by Contractor
(without liability to Contractor for trespass or conversion);

2. incorporate in the Work all materials and equipment
stored at the Site or for which Owner has paid Contractor
but which are stored elsewhere; and

3.  Complete the Work as Owner may deem expedient.

*****

D.  Nothwithstanding. Paragraphs 15.02B and 15.02C, Contractor's
services will not be terminated if Contractor begins within seven days of
receipt of notice of intent to terminate to correct its failure to perform
and proceeds diligently to cure such failure within no more than 30 days
of receipt of said notice.

*****

F.  If and to the extent that Contractor has provided a performance bond

> under the provisions of Paragraph 5.01.A, the termination procedures of that bond shall supersede the provisions of Paragraphs 15.02B and 15.02.C.

ECF No. 1-4 at 79-80.

MRSA attempts to persuade the Court that the January 20, 2012 suspend work letter would suffice as notice under the bond of its intent to declare contractor default. But suspension of work is hardly the same as notifying the contractor and surety that the owner is considering declaring a contractor default, as the contractual clauses above delineate. The only logical interpretation of events is that advanced by Travelers. That is to say, the February 20, 2012 letter that specifically states that it intends to "declare [Ankiewicz] in default" is the notice pursuant to ¶ 3.1 of the bond. The Court must conclude, therefore, that MRSA has not followed the requirements of ¶ 3 of the bond.

MRSA argues, however, that it was permitted under Pennsylvania law terminate the contract without complying with all conditions precedent because Ankiewicz materially breached the contract. It is true that the law in Pennsylvania recognizes that "[e]xcept in cases of "material" breach, "conditions precedent to a contract termination must be strictly fulfilled." *Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1271 (Pa. Super. Ct. 2012) *citing Accu-Weather, Inc., v. Prospect Comms. Inc.*, 644 A.2d 1251, 1254 (Pa. Super.

1994).  The difficulty for the undersigned is that in addition to MRSA's failure to state a legal cause of action in its complaint, MRSA did not explain to the Court what constitutes a "material breach."  MRSA described the material breach in its 'brief' as manifesting "numerous deficiencies."  ECF No. 6 at 5.  This allegation is a deficient recitation of what embodies a "material breach" in the matter at hand.

The Court is consequently unable to determine if MRSA has stated a claim in its complaint.  "[E]stablishing materiality requires a substantial showing." *Int'l Diamond Importers, Ltd.* 40 A.3d at 1271.

For these reasons, MRSA will be ordered to file an amended complaint.

## III. CONCLUSION

For all of the foregoing reasons, the motion to dismiss will be granted in part and denied in part, and plaintiff will be ordered to file an amended complaint.

An appropriate Order in accordance with this Memorandum will follow.

BY THE COURT:

<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge