IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MILTON REGIONAL SEWER,   :          4:13-CV-2786
AUTHORITY,                 :
                            :
        Plaintiff,        :          (Judge Brann)
     v.                  :
                            :
TRAVELERS CASUALTY &  :
SURETY CO. OF AMERICA,    :
                            :
       Defendant.       :

## MEMORANDUM OPINION

November 3, 2014

## I. BACKGROUND:

The question before the Court is whether one party to a contract (in this case the drafter) may ignore the bargained for terms of the contract and terminate the contract without complying with the terms prior to termination?  The answer, based on the alleged facts in this case, is no.

On October 17, 2013, Plaintiff, the Milton Regional Sewer Authority (hereinafter "MRSA"), filed a complaint in the Court of Common Pleas of Northumberland County against Travelers Casualty & Surety Co. of America (hereinafter "Travelers").  Travelers promptly removed the complaint to the United States District Court for the Middle District of Pennsylvania, predicated on diversity jurisdiction.

On November 20, 2013 Travelers filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 3.  The undersigned granted that motion in part, and denied that motion in part, holding that MRSA did not comply with the conditions precedent set forth in the contract and bond in order to terminate the contractor in compliance with the contract and bond.  The Court ordered Plaintiff to file an amended complaint that set forth facts to substantiate its' claim that the contractor was in material breach of the contract with MRSA. Under Pennsylvania law, only a material breach by the contractor is sufficient to excuse MRSA from complying with the conditions precedent in the contract for terminating the contractor.  Here, the condition precedent was a standard provision allowing for an opportunity to cure.  MRSA's original complaint only vaguely alleged "numerous deficiencies" in the contract as its basis for alleging a material breach.

MRSA filed its amended complaint on July 2, 2014.  ECF No. 13.  In this new pleading, MRSA enumerated the reasons the contractor was "deficient," such that MRSA deemed the "multitude of errors" delineated to be a material breach . ECF No. 13 at ¶¶ 12, 14, and 28.  On July 16, 2014, Travelers filed a Motion to Dismiss the amended complaint.  ECF No. 16.

The matter has been fully briefed by the parties.  Additionally, the Court had

2

the benefit of oral argument on the motion heard on October 20, 2014.  The matter is now ripe for disposition.  The Court will grant the motion and dismiss the action in its entirety.

## II. DISCUSSION:

### A.  MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However,  "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  *Kost*, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 482

(3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, 2008 U.S. Dist. LEXIS 54882, *4, 2008 WL 1969311 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964 (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief under it. *Hellmann*, *supra*. Instead, a plaintiff

4

must make a factual showing of his entitlement to relief by alleging sufficient facts

that, when taken as true, suggest the required elements of a particular legal theory.

*Twombly*, 127 S.Ct. at 1965. "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has

alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*,

*supra*, *citing* Fed. R. Civ. P. 8(a).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation

by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490

U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  A court may dismiss

a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id*. at 326.

If it is beyond a doubt that the non-moving party can prove no set of facts in

support of its allegations, then a claim must be dismissed "without regard to

whether it is based on an outlandish legal theory or on a close but ultimately

unavailing one." *Id.* at 327

## B. FACTS ALLEGED IN THE COMPLAINT

The MRSA is a municipal authority situated in Milton, Northumberland

County, Pennsylvania.  Travelers is, *inter alia*, a surety company based in

Connecticut.

In the complaint, MRSA alleges that pursuant to a performance bond

5

(hereinafter "the bond"), found at ECF No. 13 at Ex. D, Travelers is liable to

MRSA for the failure of MRSA's contractor, Ankiewicz Enterprises, Inc., d/b/a/

Grandprix Excavation (hereinafter "Ankiewicz") to perform under a construction

contract (hereinafter "the contract") between MRSA and Ankiewicz.  ECF No. 13

at Ex. A.

Ankiewicz was the low bidder on a municipal construction project known as

the Brown Avenue Pump Station Abandonment Project (hereinafter "the project"

or "the construction project") to, *inter alia*, demolish an existing wastewater

treatment pump station, abandon a force main, replace laterals, construct

approximately 4,900 feet of sewer pipe and rehabilitate approximately 820 feet of

existing sewer pipe.  ECF No. 13 at 4.  Accordingly, MRSA and Ankiewicz

entered into a construction contract on July 25, 2011. ECF No. 13 at Ex. A.   The

engineers for MRSA on the construction project were Herbert, Rowland & Grubic,

Inc. (hereinafter "HRG").

After becoming increasingly dissatisfied with Ankiewicz's work, MRSA

terminated the contract on March 15, 2012.  ECF No. 13 at 7.  The Court

previously held, as a matter of law, that MRSA did not comply with the conditions

precedent set forth in the contract to terminate Ankiewicz.[1]  ECF Nos. 11 and 12.

_____

[1] That Memorandum read, in relevant part:

MRSA's January 20, 2012 letter was a directive to suspend work on the contract.  Pursuant to Article 15.01 of the contract, MRSA was permitted to suspend work at any time.  ECF No. 1-4 at p. 79, ¶ 15.01.  This clause reads, as follows:

15.01 Owner May Suspend Work
A. At any time and without cause, Owner may suspend the Work or any portion thereof for a period of not more than 90 consecutive days by notice in writing to Contractor and Engineer which will fix the date on which Work will be resumed.  Contractor shall resume the Work on the date so fixed...

That clause is followed by a detailed termination clause.

15.02 Owner May Terminate for Cause
A. The occurrence of any one or more of the following events will justify termination for cause:

1.  Contractor's persistent failure to perform the Work in accordance with the Contract Documents (including, but not limited to, failure to supply sufficient skilled workers or suitable materials or requirement or failure to adhere to the Progress Schedule established under Paragraph 2.07 as adjusted from time to time pursuant to Paragraph 6.04);
2.  Contractor's disregard of Laws or Regulations of any public body having jurisdiction;
3.  Contractor's repeated disregard of the authority of Engineer; or
4.  Contractor's violation in any substantial way of any provisions of the Contract Documents.

B.  If one or more of the events identified in Paragraph 15.02A occur,

Owner may, after giving Contractor (and surety) seven days written notice of its intent to terminate the services of the Contractor:

> 1. exclude Contractor from the Site, and take possession of the Work and of all Contractor's tools, appliances, construction equipment, and machinery at the Site, and use the same to the full extent they could be used by Contractor (without liability to Contractor for trespass or conversion);
> 2. incorporate in the Work all materials and equipment stored at the Site or for which Owner has paid Contractor but which are stored elsewhere; and
> 3. Complete the Work as Owner may deem expedient.

*****

D.   Nothwithstanding. Paragraphs 15.02B and 15.02C, Contractor's services will not be terminated if Contractor begins within seven days of receipt of notice of intent to terminate to correct its failure to perform and proceeds diligently to cure such failure within no more than 30 days of receipt of said notice.
*****

F.  If and to the extent that Contractor has provided a performance bond under the provisions of Paragraph 5.01.A, the termination procedures of that bond shall supersede the provisions of Paragraphs 15.02B and 15.02.C.

ECF No. 1-4 at 79-80.

MRSA attempts to persuade the Court that the January 20, 2012 suspend work letter would suffice as notice under the bond of its intent to declare contractor default.  But suspension of work is hardly the same as notifying the contractor and surety that the owner is considering declaring a contractor default, as the contractual clauses above delineate. The only logical interpretation of events is that advanced by Travelers. That is to say, the February 20, 2012 letter that specifically states that it intends to "declare [Ankiewicz] in default" is the notice pursuant to ¶ 3.1

According to the amended complaint, MRSA alleges that it was excused from the cure provision because Ankiewicz materially breached the contract in the following ways:

- "the work from one manhole to another, a significant part of the work performed by Ankiewicz, was defective as the piping failed to meet the required slopes and the inverts did not meet the required elevations" ECF No. 13 at ¶ 12.a.

- "failure to supply sufficient skilled workers" ECF No. 13 at ¶ 12.b.

- "failure to adhere to the progress schedule" ECF No. 13 at ¶12.c.

- "failure to comply with laws and regulations pertaining to the work." ECF No. 13 at ¶ 12.d.

- "failure to adhere to progress schedules, an original one and 4 updates, in that work began 46 days after the date provided in the first schedule and 113 days after the Notice to Proceed" ECF No. 14 at ¶ 14.a.

- "as there specified, equal failures to meet various project milestones" ECF

---

of the bond. The Court must conclude, therefore, that MRSA has not followed the requirements of ¶ 3 of the bond.

ECF No. 11 at 11-12. (Order of June 24, 2014.)

No. 14 at ¶ 14.b.

- "at the time of final suspension, a schedule for final completion 95 days beyond the completion date specified in the Contract"  ECF No. 14 at ¶ 14.c.

- "repeated failures to protect excavations and control trench widths" ECF No. 14 at ¶ 14.d.

- "failure to comply with the One Call Law requirements resulting in disruption of water service lines of Pennsylvania American Water Company existing in the streets excavated, including two separate services being disrupted two times"  ECF No. 14 at ¶ 14.e.

- "damage to a gas service line"  ECF No. 14 at ¶ 14.f.

- "failure to comply with contract requirements for hand excavation in the vicinity of existing utilities" ECF No. 14 at ¶ 14.g.

- "exposure and failure to support a 12" water main which *could easily have* ruptured causing serious outages for numerous customers"  ECF No. 14 at ¶ 14.h. (emphasis added).

- "damage to a storm sewer system located in a private parking lot" ECF No. 14 at ¶ 14.i.

- "leaving excavations open and unattended allowing them to fill with storm

water and without any fencing to keep the general public away from the excavation" ECF No. 14 at ¶ 14.j.

• "failure to provide the proper means necessary to verify elevations of work installed" ECF No. 14 at ¶ 14.k.

• "failure to install pipes without both horizontal and vertical misalignment" ECF No. 14 at ¶ 14.l.

• "installation of the line on South Turbot Avenue such that there was excess deposition of solid materials and little or no forward flow of sewage indicating that the proper elevations had not been met." ECF No. 14 at ¶ 14.m.

• "failure to meet the mandrel test reflecting the improper installation of pipes" ECF No. 14 at ¶ 14.n.

• "failure to properly backfill resulting in settling and complaints of unsafe travel conditions" ECF No. 14 at ¶ 14.o.

• "numerous complaints of inadequate traffic control measures and conditions of travel lanes" ECF No. 14 at ¶ 14.p.

• "failure to control the trench width" ECF No. 13 at ¶ 28.a.

• "failure to keep and maintain the progress schedule" ECF No. 13 at ¶ 28.b.

- "failure to provide required slope drawings" ECF No. 13 at ¶ 28.c.

- "improper pre-cast manhole channels" ECF No. 13 at ¶ 28.d.

- "damage to sidewalks caused by driving equipment over them" ECF No. 13 at ¶ 28.e.

- "failure to coordinate road closures and provide traffic maintenance" ECF No. 13 at ¶ 28.f.

- "concerns with regard to design slope and invert requirements. Since the project involved abandonment of a pump station and replacement with a gravity flow system, these issues were critical to maintain a proper flow of the waste through the pipes. ECF No. 13 at ¶ 28.g.

## C. ANALYSIS

The contract contained, and through it the bond incorporated, a cure provision prior to termination. In the Court's Order of June 24, 2014, the Court held, as a matter of law, that it was clear that MRSA did not follow the conditions precedent set forth in the bond in order to terminate Ankiewicz pursuant to the terms of the bond and contract. The Court further held that MRSA's February 20, 2012 correspondence was the letter required by ¶ 3.1 of the bond, but Ankiewicz's February 24, 2012 responsive letter to HRG notifying it that Ankiewicz was

willing to proceed to cure,  Ex. J to Complaint, ECF No. 1-4 at 105, was sufficient

pursuant to ¶ 15.02D of the contract to at least suspend that termination for a

period of thirty (30) days.  The Court found HRG's February 28, 2012, letter to

Travelers' and Ankiewicz's attorney to advise "that [MRSA] has elected to

exercise their rights under the terms of the contract and [the bond] with respect to

declaring [Ankiewicz] in default of the contract and terminating the contract for

cause pursuant to the provisions of Article 15.02 of the General Conditions of the

Construction Contract," violated the contractual terms.  Ex. K to Complaint, ECF

No. 1-4 at 106-112.  Consequently, this Court held that MRSA did not comply

with the conditions precedent set forth in the contract and bond legally sufficient to

terminate Ankiewicz.

However, in its brief opposing the first motion to dismiss, MRSA argued

that it was permitted under Pennsylvania law to terminate the contract without

complying with all conditions precedent, including the cure provision, because

Ankiewicz materially breached the contract.  At that point, the Court could not

develop an opinion based on the alleged material breach, because MRSA did not

explain to the Court what it was alleging as constituting a "material breach."

MRSA merely described the material breach in its prior brief as manifesting

"numerous deficiencies."  ECF No. 6 at 5.   As a consequence, the Court ordered

MRSA to file an amended complaint alleging facts of a material breach by
Ankiewicz sufficiently persuasive for MRSA to terminate the construction contract
without first allowing an opportunity to cure as required by the contract and the
bond.

MRSA delineated twenty-seven (27) specific facts in its amended complaint
alleging a material breach of the contract by Ankiewicz as noted above.   The
Supreme Court of Pennsylvania has explained that some breaches are so obviously
material that immediate termination of the contract is justified without complying
with the contract's cure provision(s).  *LJL Transportation Inc. v. Pilot Air Freight
Corp.*, 599 Pa. 546 (2009).  The instant matter is not, however, comparable to
either the facts or rationale described in *LJL Transportation*.

LJLTransportation Inc. (hereinafter "LJL") was a franchisee of Pilot Air
Freight Corp. (hereinafter "Pilot"), a trucking company.  LJL also owned another
trucking company, Northeast Transportation (hereinafter "Northeast"), a direct
competitor of Pilot.  LJL was intentionally diverting freight shipments from LJL
(under Pilot's franchise agreement) to Northeast to avoid paying Pilot certain
franchise fees.  Upon learning of LJL's fraudulent conduct, Pilot immediately
terminated the franchise agreement, despite a cure provision in the contract.

The Pennsylvania Supreme Court determined, for the first time, speaking

14

through Justice Debra McCloskey Todd that "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary." *LJL Transportation Inc.*, 599 Pa. at 567.  In so holding, the Pennsylvania Supreme Court agreed with Pilot's argument that a systematic scheme to defraud cannot be cured because it results in a breach of the fundamental essence of the contract and the destruction of trust between the parties which is necessary to the franchiser/franchisee relationship. *See Id.* at 557-8.

The factual allegations in MRSA's complaint are quite distinct from the conduct at issue in *LJL Transportation.*  That appellate decision developed a fact pattern that was incurable; a quasi-criminal fraud outside the contemplation of the contract was evidenced, thus relieving Pilot from allowing LJL the opportunity to cure as required in the contract between these parties.  MRSA's rendition of the alleged facts in its amended complaint do not appear to this Court to be an "egregious" material breach.   What MRSA has alleged is poor performance of the contract which is precisely within the contemplation of the cure provision in the contract.  Consequently, the Court cannot hold as a matter of law that this was a material breach going to the essence of the contract as in *LJL Transportation*.

15

Instead, the Court must turn to "Pennsylvania's extensive body of caselaw addressing when a breach is sufficiently material to entitle the non-breaching party to cease performance." *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 2012 Pa Super 71, 40 A.3d 1261, 1270-71 (Pa. Super. Ct. 2012). "Establishing "materiality" requires a substantial showing." *Id.* at 1271. "To determine materiality, Pennsylvania courts refer to the RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)." *Id.*

The Restatement sets forth the following factors to determine materiality:

a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;

c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981).

"Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end "is a question of degree; and must be answered by weighing the consequences in the actual custom of men in the performance of

16

contracts similar to the one that is involved in the specific case."" *2401 Penna. Ave. Corp. v. Federation of Jewish Agencies of Greater Phila.*, 319 Pa.Super. 228, 466 A.2d 132, 139 (1983) (*quoting* 4 CORBIN, CONTRACTS § 946 (1951)).

However, Pennsylvania "law also is clear that "executed contracts cannot be rescinded or annulled ... simply because a party found the contract to be burdensome or a financial failure." *Int'l Diamond Importers, Ltd.*, 40 A.3d at 1271, *citing  Umbelina v. Adams*, 2011 PA Super 257, 34 A.3d 151, 159-60 (2011). Thus, if  "the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective.... In other words, the non-breaching party does not have a right to suspend performance if the breach is not material." *Int'l Diamond Importers, Ltd.*, 40 A.3d at 1271, *citing  Widmer Eng. Inc. v. Dufalla*, 837 A.2d 459, 468-69 (Pa. Super. 2003) (ellipses added; other modifications, internal quotation marks, and citations omitted).

MRSA's counsel's statements at oral argument made it clear that MRSA did not believe Ankiewicz to be in material breach of the contract, but instead that MRSA was just exasperated with Ankiewicz's perceived incompetence.  MRSA's able counsel stated to the Court at argument the following:

> So when they get to the point in February where they said enough,
> they said you have reflected the fact that you can't cure and we're not

17

> going to give you 30 more days to do something that you can't do in
>
> the past 30, 45 days.

Transcript of October 20, 2014 Oral Argument (hereinafter "Transcript") p. 15.

> Nothing happened to indicate any improvement in the whole situation,
>
> and they get to February and they said no.

Transcript p. 17.

> [W]hat's the point of having him go in for 30 more days and mess it
>
> up more?

Transcript p. 18.

What MRSA fails to apprehend is that "the point of having [Ankiewicz] go in for 30 more days" to cure is that it was an explicit contractual requirement. Pennsylvania "law [] is clear that "executed contracts cannot be rescinded or annulled ... simply because a party found the contract to be burdensome or a financial failure." *Int'l Diamond Importers, Ltd.*, 40 A.3d at 1271, *citing  Umbelina v. Adams*, 2011 PA Super 257, 34 A.3d 151, 159-60 (2011).   Moreover, if "the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective.... In other words, the non-breaching party does not have a right to suspend performance if the breach is not material."

*Int'l Diamond Importers, Ltd.*, 40 A.3d at 1271, *citing Widmer Eng. Inc. v. Dufalla*, 837 A.2d 459, 468-69 (Pa. Super. 2003) (ellipses added; other modifications, internal quotation marks, and citations omitted). "Except in cases of "material" breach, "conditions precedent to a contract termination must be strictly fulfilled."" *Accu–Weather, Inc., v. Prospect Comms., Inc.*, 435 Pa.Super. 93, 644 A.2d 1251, 1254 (1994).

Materiality is a matter of fact for a jury, of course, not a question of law for the court. Turning our attention to the *Restatement* factors, MRSA has, however, twice failed to allege facts sufficient to meet the substantial showing of materiality. Ankiewicz acknowledges that he offered to cure. MRSA was deprived of the benefit it expected, of properly executed construction work, precisely the type of routine construction issue cure provisions are designed to address and remedy.

From a procedural standpoint, a complaint should only be dismissed if, accepting as true all of the allegations contained in it, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664. Even under this lower notice

19

pleading standard, a plaintiff must nevertheless do more than recite the elements of

a cause of action, and then make a blanket assertion of an entitlement to relief

under it. *Hellmann*, *supra*.   Instead, a plaintiff must make a factual showing of his

entitlement to relief by alleging sufficient facts that, when taken as true, suggest

the required elements of a particular legal theory. *Twombly*, 127 S.Ct. at 1965.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - - but it has not "shown" - -

"that the pleader is entitled to relief." *Iqbal*, *supra*, *citing* Fed. R. Civ. P. 8(a).


In the present matter, Ankiewicz probably breached the contract.  Had

MRSA provided Ankiewickz the opportunity to cure and had it failed to do so

within the time limit set forth in the contract, MRSA most likely would have been

within its contractual right to terminate Ankiewicz at that point.  However, MRSA

has conflated breach with  material breach.  Only a material breach is sufficient for

MRSA terminate the contract <u>without</u> complying with the termination provisions

that include cure.  Accordingly, MRSA has twice pled that Ankiewicz breached the

contract;  MRSA has twice failed to plead that Ankiweicz materially breached the

contract such that the material breach would excuse MRSA from complying with

the contractually agreed to termination procedures.

For the Court to conclude and hold otherwise would result in a perverse result for Travelers and other sureties.  To expect a surety to insure a contract, but then allow one party to that contract to avoid the express terms of the insured contract would expose the sureties to increased risk.  A surety must rely on the parties' compliance with contractual provisions in order to adequately assess the risk of insuring its insured.

Although there is a "liberal pleading philosophy of the federal rules" a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.  *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  This Court explained in its June 24, 2014 Order specifically what needed to be plead.  MRSA has now had the benefit of crafting two complaints and explaining its position at oral argument.  Despite this,  MRSA has twice failed to plead facts sufficient to allow a jury to find the **substantial showing** of materiality set forth in the *Restatement (Second) of Contracts* § 241 (1981).[2]  It apparently cannot do so.

---

[2]Indeed, the area of securities litigation has developed the concept that represented parties need not be given limitless opportunities to amend.

Exasperation with a contractors work performance is not sufficient to state a

---

Ordinarily, the plaintiff may be granted "leave [to amend,] ... when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993). Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman*, 371 U.S. at 182-83, 83 S.Ct. 227. However, "[a]llowing leave to amend where "there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings under the heightened requirements of the PSLRA" would frustrate Congress's objective in enacting this statute of "provid[ing] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis."" *California Public Employees Retirement System v. Chubb Corp.,* 394 F.3d 126, 164 (*quoting GSC Partners CDO Fund v. Washington,* 368 F.3d 228, 246 (3d Cir. 2004); *see In re In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214 (D.N.J. 2002) ("[T]he Reform Act would be "meaningless' if judges liberally granted leave to amend on a limitless basis") (*citing Champion Enter., Inc., Sec. Litig.*, 145 F.Supp.2d 871, 872 (E.D.Mich.2001)). For instance, where the plaintiff had already amended plaintiff's complaint and yet failed to allege sufficient facts, the courts may find that "[t]hree bites at the apple is enough,"   and conclude that it is proper to deny leave to replead. *Salinger v. Projectavision, Inc.*, 972 F.Supp. 222, 236 (S.D.N.Y.1997) (*citing Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir.1996); *In re Career Educ. Corp., No. 03 C 8884,* 2007 WL 1029092, at *10 (N.D. Ill. Mar. 29, 2007)(where "plaintiffs have had ample opportunities to research and plead their claims"  but failed to compose a sufficient pleading, the complaint is dismissed with prejudice); *American Express Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir.1994); and *Fisher v. Offerman & Co., Inc.*, 1996 WL 563141, 1996 U.S. Dist. LEXIS 14560 (S.D.N.Y.1996)).

*In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 378-79 (D.N.J. 2007)

claim for material breach. Without alleged facts of a <u>material</u> breach by Ankiewicz,
MRSA is not relieved of its contractual obligation to provide Ankiewicz an
opportunity to cure. For the reasons set forth above, directing MRSA to file a
second amended complaint would be futile.  The Court will grant the defendant's
motion.

## III. CONCLUSION

Travelers' Motion to Dismiss, ECF No. 16, will be granted.  The amended
complaint will be dismissed with prejudice.

BY THE COURT:

<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge